UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTGOMERY BLAIR SIBLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD W. ROBERTS and )<br>ANGELA O. CAESAR, )<br>)<br>Defendants. )<br>) | Civil Action No. 16-572 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Montgomery Blair Sibley, seeks declaratory relief and damages arising from assertions that the defendants, former Chief Judge Richard W. Roberts and Clerk of the Court, Angela O. Caesar, violated the plaintiff's First and Fifth Amendment rights by failing to docket two motions submitted by the plaintiff in a criminal case assigned to defendant Roberts in which the plaintiff was the prior defense attorney of record. See First Amended Complaint for Damages and Declaratory Judgment ("Am. Compl.") at ¶¶ 5–6, 10, 15–18, 21–23, 30. Currently before the Court is the Defendants' Renewed Motion to Dismiss ("Defs.' Mot."), the Plaintiff's Emergency Motion for Pre-Trial Conference to Schedule Expedited Disposition of Sibley's Third Claim ("Pl.'s Mot. for Conf."), and Sibley's Verified Motion to Disqualify the Honorable Judge Reggie B. Walton and the Entire Bench of the U.S. District Court for the District of Columbia ("Pl.'s Mot. for Recusal"). Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny both of the plaintiff's motions and grant the defendants' motion to dismiss.

---

[1] In addition to the filings previously identified, the Court considered the following submissions in reaching its

(continued . . .)

# I. BACKGROUND

In 2007, the plaintiff appeared as counsel of record for Deborah Palfrey in the case of United States v. Palfrey, a criminal case that was assigned to Judge Gladys Kessler of this Court. See Am. Compl., Exhibit ("Ex.") A (Criminal Docket for Case #: 1:07-cr-00046 ("Palfrey Docket")) (indicating that the plaintiff was the prior attorney of record for Deborah Palfrey). Palfrey was charged with various federal violations related to her alleged operation of an interstate prostitution business. See Indictment, United States v. Palfrey, Crim. Action No. 07-46 (D.D.C. Mar. 1, 2007).[2] In November 2007, Judge Kessler granted the plaintiff's Application for Issuance of Subpoenas in United States v. Palfrey, which sought account information from telephone companies for clients of Palfrey's escort service. Am. Compl. ¶¶ 12–13. Shortly thereafter, Verizon Wireless responded to the subpoena by providing records containing information for 815 account holders that the plaintiff alleges were Palfrey's former escorts or clients. Id. ¶ 13.

On January 13, 2016, the plaintiff "deposited with defendant Caesar" a motion that sought to modify a restraining order in place in United States v. Palfrey, id. ¶ 15, so that he could make the Verizon Wireless records public because, in the plaintiff's view, those records constitute "matters of public concern," id. ¶ 14. On February 3, 2016, defendant Roberts issued an order denying the plaintiff leave to file the motion because: (1) the plaintiff "ha[d] been

---

(…continued)
decision: (1) the defendants' Memorandum of Points and Authorities in Support of Defendants' Renewed Motion to Dismiss ("Defs.' Mem."); (2) the Plaintiff's Response to Defendants' Motion to Dismiss First Amended Complaint ("Pl.'s Opp'n"); (3) the defendants' Reply Memorandum of Points and Authorities in Support of Defendants' Renewed Motion to Dismiss ("Defs.' Reply"); and (4) the defendants' Memorandum in Opposition to Plaintiff's Emergency Motion for Pre-Trial Conference ("Defs.' Conf. Opp'n").

[2] The Court takes judicial notice of the record in United States v. Palfrey, Crim. Act. No. 07-46 (RWR). See Gomez v. Wilson, 477 F.2d 411, 416 n.28 (D.C. Cir. 1973) (recognizing the "authority to judicially notice the record in other litigation" filed in the same court).

suspended from practicing before this Court"; (2) the plaintiff had been "terminated as [Palfrey's] counsel"; and (3) the plaintiff's "motion purport[ed] to refer to records subpoenaed on behalf of the defendant that it seems would properly be in the possession of the attorney of record for the defendant, not in [the plaintiff's] possession." Defs.' Mot., Ex A (Order dated Feb. 3, 2016) at 1–2. Pursuant to defendant Roberts' order, defendant Caesar did not docket the plaintiff's motion. See Am. Compl. ¶ 16; see also id., Ex. A. (Palfrey Docket). Subsequently, the plaintiff filed with defendant Caesar a motion to reconsider, as well as a motion to disqualify defendant Roberts. Am. Compl. ¶ 17, see also id., Ex. B (Letter from the plaintiff to the Clerk's Office (Feb. 8, 2016) ("Mot. to Reconsider")) at 1. Defendant Roberts once again ordered defendant Caesar to not docket these motions pursuant to his February 3, 2016 order. Id. ¶ 18; see also id., Ex. B (Mot. to Reconsider) at 1.

On February 22, 2016, the plaintiff filed suit against defendants Roberts and Caesar in the Superior Court for the District of Columbia. See Complaint for Damages and Declaratory Judgment at 1. The defendants filed a Notice of Removal on March 28, 2016, removing the case to this Court. See Notice of Removal at 1. On April 5, 2016, the defendants filed a motion to dismiss. See Defendants' Motion to Dismiss at 1. On April 12, 2016, the plaintiff filed his Amended Complaint, see Am. Compl., thereby mooting the defendant's April 5, 2016 motion to dismiss, see Barnes v. District of Columbia, 42 F. Supp. 3d 111, 117 (D.D.C. 2014) ("When a plaintiff files an amended complaint as of right within 21 days after the filing of the motion to dismiss under Rule 12(b), (e), or (f), the amended complaint becomes the operative pleading, and any pending motion to dismiss becomes moot." (internal citations omitted)), as well as his emergency motion for a pre-trial conference, see Pl.'s Mot. for Conf. at 1. On June 24, 2016, the plaintiff filed his motion for recusal. Pl.'s Mot. for Recusal at 1.

3

## II.  STANDARDS OF REVIEW

### A.  28 U.S.C. § 144

Pursuant to 28 U.S.C. § 144, a party to any proceeding in district court may seek to have another judge assigned to his case provided that the party can demonstrate "that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." Section 144 requires that a party seeking reassignment to another judge "make[] and file[] a timely and sufficient affidavit . . . stat[ing] the facts and the reasons for the belief that bias or prejudice exists." Id. A legally sufficient affidavit "requires that facts be set forth with sufficient particularity that 'would fairly convince a sane and reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute.'" Walsh v. Comey, 110 F. Supp. 3d 73, 77 (D.D.C. 2015) (quoting Strange v. Islamic Republic of Iran, 46 F. Supp. 3d 78, 81 (D.D.C. 2014)). The affidavit "shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard" and it "shall be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144.

### B.  28 U.S.C. § 455

Pursuant to 28 U.S.C. § 455 (2012), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," § 455(a), or when the judge "has a personal bias or prejudice concerning a party," id. § 455(b)(i). "'Recusal [for impartiality] is required when a reasonable and informed observer would question the judge's impartiality,' while recusal for personal bias requires a showing of 'actual bias or prejudice.'" Ryan v. FBI, 125 F. Supp. 3d 1, 3 (D.D.C. 2015) (first quoting SEC v. Loving Spirit Found., Inc., 392 F.3d 486, 493 (D.C. Cir. 2004); and then quoting Tripp v. Exec. Office of the President, 104 F. Supp. 2d 30, 34 (D.D.C. 2000)).

C.  **Federal Rule of Civil Procedure 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged"). Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this assumption. See, e.g., Kowal, 16 F.3d at 1276. Along with the allegations made within the four corners of the complaint, the court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.  ANALYSIS

A.  **The Plaintiff's Motion for Recusal**

The plaintiff's motion for recusal seeks "an order [d]isqualifying the Honorable Judge Reggie B. Walton and the Entire Bench of the U.S. District Court for the District of Columbia." Pl.'s Mot. for Recusal at 1. The plaintiff argues that all of the judges on this Court should be recused because "[d]efendant Roberts was the functional management superior of each and ever[y] member of the bench of the U.S. District Court for the District of Columbia and . . . had

close personal relationships with each member of the bench." Id. The plaintiff also alleges that "[d]efendant Caesar is the functional subordinate of each and ever[y] member of the bench of the U.S. District Court for the District of Columbia and . . . has close personal relationships with each member of the bench." Id. Based on these relationships, the plaintiff "believes that he cannot receive[] a fair and impartial hearing before any of the judges of the U.S. District Court for the District of Columbia." Id. at 2.

In his motion, the plaintiff does not specify whether he seeks recusal under § 144 or § 455. In any event, the plaintiff has failed to meet the standards for recusal under both sections. First, under § 144, the plaintiff has not filed a legally sufficient affidavit.[3] The plaintiff's sole basis for recusal is that both defendants "had close personal relationships with each member of the bench of the U.S. District Court for the District of Columbia." Pl.'s Mot. for Recusal at 1 (emphasis added). The Court concludes that this allegation does not constitute a fact, but rather a "mere[] conclus[ion,] and [is] therefore legally insufficient" under § 144. Walsh, 110 F. Supp. at 77; see also Strange, 46 F. Supp. 3d at 81 ("[T]he affidavit 'must state facts as opposed to conclusions, and while the information and belief of the affiant as to the truth of the allegations are sufficient, mere rumors and gossip are not enough.'" (quoting United States v. Hanrahan, 248 F. Supp. 471, 475 (D.D.C. 1965)). Accordingly, the plaintiff's motion for recusal fails under § 144.[4]

---

[3] The Court construes the plaintiff's motion for recusal as including the equivalent of an affidavit because, in his motion, the plaintiff "states that the factual matters stated herein are true under penalty of perjury." See Pl's Mot. for Recusal at 1.

[4] Moreover, the plaintiff has failed to comply with the § 144 requirement that an affidavit in support of recusal be submitted with a certificate of good faith signed by counsel of record. See 28 U.S.C. § 144. Courts are divided on whether a pro se plaintiff can comply with this requirement. See Klayman v. Judicial Watch, Inc., 744 F. Supp. 2d 264, 274 (D.D.C. 2010) (noting divide among courts about whether § 144 is applicable to pro se parties). Because this Court finds the plaintiff's motion to be insufficient on other grounds, it need not address the certificate of good faith requirement.

Assuming the plaintiff seeks recusal under § 455, his grounds for recusal are not dissimilar to one of the claims of bias made in Reddy v. O'Connor, 520 F. Supp. 2d 124 (D.D.C. 2007). There, the plaintiff brought suit against over 200 defendants, including Chief Justice John Roberts and four other justices of the United States Supreme Court. Id. at 126–127. The plaintiff filed a § 455 motion to recuse another member of this Court, Judge John D. Bates, Jr., who had been assigned the case, "on the ground that [Judge Bates's] impartiality 'might reasonably be questioned.'" Id. at 128 (quoting 28 U.S.C. § 455(a)). One argument advanced by the plaintiff in Reddy was that, because Chief Justice Roberts had appointed Judge Bates to the United States Foreign Intelligence Surveillance Court ("FISC"), Judge Bates "ha[d] a 'close personal relationship' with the Chief Justice resulting in a real or potential bias in [the Chief Justice's] favor." Id. The Court rejected that argument, concluding that "[n]o personal or financial concerns of [Judge Bates] [we]re implicated by the appointment" to the FISC, and that "the relationship that has followed from the appointment is a professional one, and such professional relationships generally are not grounds for recusal where official action is at issue." Id.

This Court concludes that the analysis in Reddy applies with equal force here because the relationships between the undersigned judge and both defendants are professional, not personal. See id. Furthermore, because the defendants' official action of refusing to docket the plaintiff's motions is at issue in this case, the undersigned's relationship with both defendants simply does not present a valid grounds for recusal under § 455, because "professional relationships are generally not grounds for recusal where official action is at issue." Id. Accordingly, the Court must deny the plaintiff's motion to disqualify the undersigned judge from this case.[5]

---

[5] The Court similarly denies the plaintiff's request to disqualify the entire bench of this Court because § 455 only
(. . . continued)

### B.     The Plaintiff's Bivens Claims

In his amended complaint, the plaintiff asserts that "[b]y directing [d]efendant Caesar to refuse to [docket] [the plaintiff's motions], [d]efendant Roberts wrongfully chilled [the plaintiff's] . . . exercise of his First Amendment rights." Am. Compl. ¶ 21. Further, the plaintiff alleges that defendant Roberts violated the plaintiff's "Fifth Amendment right to an impartial tribunal . . . [b]y directing [d]efendant Caesar to not [docket] [the plaintiff's] Motion to Disqualify in U[nited] S[tates] v. Palfrey while ruling on the Motion to Reconsider." Id. ¶ 22. Additionally, the plaintiff contends that "[d]efendant Caesar wrongfully chilled . . . his exercise of his First Amendment rights to access [the] court, petition the government, and publish" "[b]y refusing to [docket] [his motions]." Id. ¶ 30. The plaintiff argues that both defendants' actions are actionable constitutional violations under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Id. ¶¶ 24, 31.

In Bivens, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001) (citing Bivens, 403 U.S. 388). The Bivens doctrine initially applied to claims of Fourth Amendment violations, see Bivens, 403 U.S. at 389, but was thereafter extended to cover federal officers' alleged violations of the Fifth and Eighth Amendments, see Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment). Courts, however, have "consistently refused to extend Bivens liability to any new context or new category of defendants" since 1980, Malesko, 534 U.S. at 67; see also Minneci v. Pollard, __ U.S. __, __, 132 S. Ct. 617, 622–23 (2012)

---

(. . . .continued)
allows a judge to disqualify him or herself from a proceeding, not to disqualify other members of the Court. See 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself [or herself] in any proceeding . . ." (emphasis added)).

(summarizing the five cases since Carlson in which the Supreme Court has decided not "to imply a Bivens action," and concluding that the defendant in Minneci similarly "[could not] assert a Bivens claim" against private prison employees), and the Bivens doctrine has never been extended to apply to the actions of judicial officers, see Tinsley v. Widener, 150 F. Supp. 2d 7, 11–12 (D.D.C. 2001) (concluding that judicial immunity barred the plaintiff's Bivens claim). To the contrary, it is well established that actions taken by judicial officers in their official capacity qualify for absolute immunity from suit. See, e.g., Mireles v. Waco, 502 U.S. 9, 10 (1991); Sindram v. Suda, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (per curiam).

The principle of judicial immunity is "of the highest importance to the proper administration of justice" because it ensures that "a judicial officer . . . shall be free to act upon his own convictions, without apprehension of personal consequences to himself." See Mireles, 502 U.S. at 10 (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1872)). "[J]udicial immunity is not overcome by allegations of bad faith or malice," id. at 11, and "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority," Stump v. Sparkman, 435 U.S. 349, 356–57 (1978). Further, judicial immunity extends to court clerks in regards to the "performance of tasks that are an integral part of the judicial process." Sindram, 986 F.2d at 1460.

Judicial immunity is overcome only when a judge's or court clerk's conduct is nonjudicial in nature or where the judicial action was "taken in the complete absence of jurisdiction." Mireles, 502 U.S. at 11–12. Jurisdiction, under this test, "is construed broadly so that a judge will not be held liable unless he acts without color of authority." Apton v. Wilson, 506 F.2d 83, 90 (D.C. Cir. 1974). Accordingly, the relevant question in assessing whether

judicial immunity applies to a judge under a particular factual scenario is whether he was performing a "function normally performed by a judge." Mireles, 502 U.S. at 12.

In this case, there is no question that defendant Roberts acted within his jurisdiction and was performing a function normally performed by a judge when he issued the two orders denying the plaintiff leave to file his motions.[6] "A judge's decision to file or deny a party's motions or requests is an action routinely performed by a judge in the course of litigation, and thus would constitute a judicial act immune from suit." Thomas v. Wilkins, 61 F. Supp. 3d 13, 19 (D.D.C. 2014), aff'd, No. 14-5197, 2015 WL 1606933 (D.C. Cir. 2015). Thus, judicial immunity bars the plaintiff's claims against defendant Roberts.

The plaintiff's claims against defendant Caesar are similarly barred. Defendant Caesar was performing a task integral to the judicial process when she complied with court orders which directed her not to docket the plaintiff's motions. See Sindram, 986 F.2d at 1461. Courts have consistently held that a "clerk or deputy clerk's receipt and processing of a litigant's filings are part and parcel of the process of adjudicating cases." Sibley v. United States Supreme Court, 786 F. Supp. 2d 338, 344 (D.D.C. 2011) (holding that the plaintiff's claims against the clerk and the deputy clerk were barred because the clerk and the deputy clerk were entitled to judicial immunity (citing Reddy, 520 F. Supp. 2d at 130)); see also Sindram, 986 F.2d at 1461 (finding that a clerk was performing an "integral part[] of the judicial process" even when executing an erroneous order).

---

[6] The plaintiff has sought leave to amend his complaint to sue defendant Roberts in his official capacity in addition to his personal capacity. Pl.'s Opp'n at 4. The relevant inquiry in judicial immunity analysis, however, is whether the acts themselves were judicial in nature, not whether the defendant was sued in his personal or official capacity. See Mireles, 502 U.S. at 12. Having concluded that the acts in question were judicial in nature, the Court need not address the plaintiff's request to amend his complaint, as the proposed amendment would be futile.

Despite the existing judicial landscape, the plaintiff argues that judicial immunity does not apply in this case because the defendants' actions violated 18 U.S.C. § 2071, a criminal statute that prohibits unlawful concealment, removal, or destruction of judicial records. See Pl.'s Opp'n at 1–3. Even if the Court were to conclude that the defendants' actions were criminal, which it has no basis to do, the plaintiff's position is incorrect. Although a judge is not immune from criminal prosecution, judicial immunity from civil liability extends even to actions that are allegedly malicious or corrupt. See Mireles, 502 U.S. at 10–13 (concluding that a state court judge was immune from suit in which the plaintiff alleged that the judge ordered police officers "to forcibly and with excessive force seize and bring [the] plaintiff into his courtroom" (internal citations and quotation marks omitted)); see also Dennis v. Sparks, 449 U.S. 24, 27 (1980) (holding that judicial immunity barred a claim against a state court judge alleging that the judge accepted a bribe in exchange for issuing an injunction). Accordingly, because claims one and two of the plaintiff's Amended Complaint are barred by judicial immunity, both claims must be dismissed for failure to state a claim upon which relief may be granted.[7]

## C.   The Plaintiff's Request for Declaratory Relief

The plaintiff's third claim is for declaratory relief, requesting that the Court "[d]eclare that the subpoena returns from Verizon Wireless are not subject to any restraining orders issued in U[nited] S[tates] v. Palfrey and thus [the plaintiff] may do with them as he deems fit." Am. Compl. ¶ 33. The Court concludes that this claim is barred because it constitutes an improper challenge to an order issued by another member of this Court.

---

[7] Having concluded that the defendants are entitled to judicial immunity, the Court need not address the defendants' argument that the Court should decline to create a new Bivens remedy. See Defs.' Mot. at 9–12. Nonetheless, the Court notes the strong presumption against creating new Bivens remedies as noted by the Supreme Court in Malesko, 534 U.S. at 70 ("In [thirty] years of Bivens jurisprudence we have extended its holding only twice . . . ."), and Minneci, 132 S. Ct. at 622 ("Since Carlson, the Court has had to decide in several different instances whether to imply a Bivens action. And in each instance it has decided against the existence of such an action.").

The Supreme Court has held that "'it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either <u>by itself or by a higher court</u>, its orders based on its decision are to be respected.'" <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 313 (1995) (emphasis added) (quoting <u>Walker v. Birmingham</u>, 388 U.S. 307, 314 (1967)). The doctrine barring improper collateral attacks has been applied specifically to parties seeking a declaratory judgement challenging a ruling in a separate action because "[d]eclaratory relief against a judge for final actions taken within his or her judicial capacity is instead available by way of a direct appeal of the judge's order." <u>Jenkins v. Kerry</u>, 928 F. Supp. 2d 122, 135 (D.D.C. 2013); <u>see also</u> <u>Glitsch, Inc. v. Koch Eng'g Co.</u>, 216 F.3d 1382, 1384 (Fed. Cir. 2000) (holding that a request for declaratory relief was barred by the collateral attack doctrine when the plaintiff had access to the appellate process); <u>Thomas</u>, 61 F. Supp. 3d at 20 (holding that the Court did not have the authority to review the decisions in a separate case before another member of the Court because "[t]his Court is not a 'reviewing court and cannot compel . . . other Article III judges in this or other districts or circuits to act'" (quoting <u>Sibley</u>, 786 F. Supp. 2d at 345)).

Here, the plaintiff argues that his request for declaratory relief is not an improper collateral attack because it was made to a "coordinate—not collateral—court." Pl.'s Opp'n at 4. The plaintiff's argument, however, is unsupported by controlling precedent. "A 'collateral attack' is '[a]n attack on a judgment in a proceeding <u>other than a direct appeal</u>,'" <u>Wall v. Kholi</u>, 562 U.S. 545, 552 (2011) (emphasis in original) (quoting <u>Black's Law Dictionary</u> 298 (9th ed. 2009)), and the plaintiff's attempt to have this Court recognize an exception to this definition must be rejected. Regardless of how the plaintiff seeks to characterize his challenge, he is asking this Court to do nothing other than second-guess an order issued by another judge on this Court,

which this Court cannot do. The plaintiff's only recourse is through a direct appeal to the District of Columbia Circuit.[8] Accordingly, the plaintiff's claim for declaratory relief is a collateral attack and therefore must be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that a reasonable person would not question the undersigned judge's impartiality. Furthermore, defendants Roberts and Caesar are entitled to absolute judicial immunity with respect to the plaintiff's Bivens claims. Finally, the plaintiff's request for declaratory relief is barred by the improper collateral attack doctrine. As a result, the Court will deny the plaintiff's motion to disqualify the undersigned from this case and grant the defendants' motion to dismiss the plaintiff's Amended Complaint.[9]

**SO ORDERED** this 19th day of December, 2016.[10]

REGGIE B. WALTON<br>
United States District Judge

---

[8] The Court notes that the plaintiff did pursue appellate relief by filing a petition for writ of mandamus with the District of Columbia Circuit, which was denied. See Order (May 3, 2016), In re Montgomery Blair Sibley, No. 16-3007. The District of Columbia Circuit subsequently denied the plaintiff's motion for reconsideration. See Order (July 20, 2016), In re Montgomery Blair Sibley, No. 16-3007.

[9] The Court will also deny as moot the plaintiff's motion for an emergency hearing because the Court is dismissing all of the plaintiff's claims.

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.